DICKINSON WRIGHT PLLC
BRIAN R. IRVINE
Nevada Bar No. 7758
WILLIAM L. NOVOTNY
(admitted pro hac vice)
100 West Liberty Street
Suite 940
Reno, Nevada 89501
Tel.: (775) 343-7500
Fax:  (844) 670-6009
Email: birvine@dickinsonwright.com
wnovotny@dickinson.com

*Attorneys for Jennifer M. Goldstein*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA
### LAS VEGAS DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 22-11249-abl |
| | ) | |
| NUVEDA LLC, A NEVADA LIMITED | ) | Chapter 11 |
| LIABILITY COMPANY | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### *MOTION TO DISMISS BANKRUTPCY CASE*

Jennifer M. Goldstein ("Goldstein"), by and through her undersigned counsel, hereby files this *Motion to Dismiss Bankruptcy Case* ("Motion"). This Motion seeks the dismissal of the bankruptcy case ("Case") of the Debtor, NuVeda LLC. (alternatively "Debtor" or "NuVeda"), pursuant to 11 U.S.C. § 305(a) or, alternatively, pursuant to 11 U.S.C. § 1112(b) on the grounds that NuVeda does not qualify as a debtor based on the fact that its assets and business operations include or involve cannabis-based businesses, in violation of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*  ("CSA").

This Motion is supported by the papers and pleadings on file in this Case, judicial notice of which is respectfully requested, the following Memorandum of Points and Authorities, the contemporaneously-filed *Declaration of Brian R. Irvine in Support of Jennifer M. Goldstein's*



*Motion to Dismiss Bankruptcy Case*, and any oral argument the Court may consider at hearing on this Motion.

DATED this 29ᵗʰ day of June, 2022.

DICKINSON WRIGHT PLLC

*/s/ Brian R. Irvine*
BRIAN R. IRVINE
Nevada Bar No. 7758
WILLIAM L. NOVOTNY
(admitted pro hac vice)
100 West Liberty Street
Suite 940
Reno, Nevada 89501
*Attorneys for Jennifer M. Goldstein*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157, and LR 1001(b)(1). Adjudication of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Pursuant to Local Rule 7008, Goldstein consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

### II. INTRODUCTION

Since its formation as a Nevada limited liability company, the Debtor's business purpose has been the creation, management, licensing, advising, consulting, and investment in the cannabis business. Although the Debtor may assert that it has had no income or revenue since 2019, its sole sources of revenue have been derived from the cannabis business. The sole meaningful assets disclosed in its bankruptcy Schedules involve the Debtor's claims and causes of action that all involve and relate to the cannabis industry.  Therefore, NuVeda does not qualify as a debtor under the Bankruptcy Code. Its business operations and the ownership of its existing assets would constitute a violation of the CSA. This Case must be dismissed because the continuation of the Case would require the Court, the Trustee, and the Debtor, as a Debtor in



Possession, to administer assets that are illegal under the CSA, including, without limitation, Article 5 avoidance actions to recover cannabis assets fraudulently transferred by NuVeda, or that constitute proceeds of activity criminalized by the CSA.

### III.    STATEMENT OF RELEVANT FACTS

#### A.  **Background on NuVeda and the Underlying Dispute with Goldstein**

1.  In July 2014, seven individuals executed an Operating Agreement for NuVeda to engage in all lawful activities, including, but not limited to the following activities: The research, design, creation, management, licensing, advising and consulting regarding the legal medical marijuana industry, as such matters shall be lawfully allowed under applicable state laws. Such purpose shall be broadly read to include providing management or other professional services to any individual, group or entity that is lawfully licensed, or seeking to become lawfully licensed, under any state statutory scheme providing for the legal cultivation, processing or dispensing of medical marijuana. (**Exhibit 2**, Dkt. 113 in Case No. A-15-728510-C, Mot. to Vac. at p. 3; at Exhibit 1 ("Operating Agreement"); and at Exhibit 20 ("Interim Award")).[1]

2.  The NuVeda members consisted of: (a) Pejman Bady ("Bady"); (b) Pouya Mohajer ("Mohajer"); (c) Shane Terry ("Terry"); (d) Ryan Winmill ("Winmill"); (e) Joseph Kennedy ("Kennedy"); (f) John Penders ("Penders"); and (g) Goldstein. (*Id*. at Exhibit 1, Operating Agreement at 22).

3.  Contemporaneous with the formation of NuVeda, the members of NuVeda caused the formation of subsidiary companies Clark NMSD LLC ("Clark"), Clark Natural Medicinal Solutions LLC ("Clark Medicinal"), and Nye Natural Medicinal Solutions LLC ("Nye") (collectively, the "Subsidiaries"). (Ex. 1, Mot. to Vac. at Exhibit 20, Interim Award at 1). The Subsidiaries were wholly-owned by NuVeda. (*Id*. at p. 2).

4.  On or about November 4, 2014, NuVeda was notified by the State of Nevada that it, through the Subsidiaries – had been awarded six (6) medical marijuana certificates comprising

---

[1] The Exhibits referenced in this Motion are included with the separate and contemporaneously-filed *Declaration of Brian R. Irvine in Support of Jennifer M. Goldstein's Motion to Dismiss Bankruptcy Case*.



of two dispensary certificates (one located in City of North Las Vegas and one located in City of Las Vegas) to Clark; one (1) cultivation certificate and one (1) production certificate to Clark Medicinal; and one (1) cultivation certificate and one (1) production certificate to Nye (*Id*. at p. 4; and at Exhibit 20, Interim Award at p. 2; *see also id*. at Exhibit 10, Initial Parker Report at Appx. G, letters from State of Nevada notifying NuVeda's subsidiaries of award of provisional medical marijuana licenses, pp. 113-118).

5.    In November 2015, a dispute arose among the members of NuVeda regarding obtaining financing to assist with its cannabis operations. (Exhibit 2, Dkt. 113, Mot. to Vac. at p. 5). At that time, NuVeda was divided into two factions: (a) a majority faction consisting of members Bady, Mohajer, and Kennedy, who possessed a combined 68.5% interest in NuVeda; and (b) the minority faction consisting of members Terry and Goldstein who possessed a combined 28% interest in the company. (*Id*). NuVeda's majority wanted to pursue a financial proposal from CWNevada, LLC ("CWNevada") and the minority explored a financing proposal from 4Front, LLC ("4Front"). (*Id*.).

6.    On November 23, 2015, NuVeda's majority interest holders voted and approved the financing proposal letter of intent submitted by CWNevada pursuant to corporate resolutions. (*Id*. at 6). NuVeda then executed a Membership Interest Purchase Agreement between CWNevada, a to-be-formed entity called CWNV, LLC ("CWNV"), NuVeda, Clark and Nye, with the effective date of December 6, 2015 (the "CWNevada MIPA"). (Exhibit 2, Dkt. 113, Mot. to Vac. at Exhibit 20, Interim Award at p. 2).

7.    Pursuant to the CWNevada MIPA, Clark, and Nye were to transfer the two (2) dispensary licenses, one (1) production license, and one (1) cultivation license to CWNV, in exchange for NuVeda owning 35% of CWNV. CWNevada was to own the remaining 65% interest in CWNV. (*Id*.)

8.    Subsequent disputes between the NuVeda members led to the initiation of litigation in Nevada state court (the "Goldstein Litigation") and a private arbitration ("Arbitration") between Goldstein and NuVeda. (Ex. 2, Mot. to Vac. at p. 4; Exhibit 20 Interim Award at p. 2).



9.   In the Goldstein Litigation, Goldstein petitioned the Court for injunctive relief enjoining any transfer of NuVeda's assets. On December 28, 2015, and January 6-8, 2016, the Court in the Goldstein Litigation held an evidentiary hearing on the motion for preliminary injunction. On January 13, 2016, the Court denied Goldstein's request for a preliminary injunction, finding that there was no basis to disturb the decision made by the majority of membership interests to transfer certain assets of NuVeda to CWNV pursuant to the CWNevada MIPA. (**Exhibit 3,** Dkt. 37 in Case No. A-15-728510-C, Findings of Fact and Conclusions of Law Denying Plaintiffs' Motion for Preliminary Injunction, Denying Defendant's Countermotion for Preliminary Injunction and Joinder, and Entering Provisional Remedy Pursuant to N.R.S. 38.222).

10. During the pendency of the Arbitration, on August 8, 2017, the requisite number of voting members voted to expel Goldstein from NuVeda pursuant to Section 6.2 of the Operating Agreement. (Ex. 2, Mot. to Vac. at p. 6; Exhibit 20, Interim Award at p. 3).

11. Pursuant to Section 6.2 of the Operating Agreement, Goldstein's expulsion entitled her to "receive from the Company, in exchange for all of the former Member's Ownership Interest, the fair market value of that Member's Ownership Interest, adjusted for profits and losses to the date of expulsion…" (*Id*. at Exhibit 20, Interim Award at p. 3; Exhibit 1, Operating Agreement at Sec. 6.2). In the event that the fair market value could not be agreed upon, "the Voting Members shall hire an appraiser to determine fair market value." (*Id*.)

B.  **The Valuation of Goldstein's Interest in NuVeda based on NuVeda's Cannabis Assets, the Arbitration, and Arbitration Award**

1.   After Goldstein's expulsion, Michael R. Webster of the Webster Business Group was retained to provide an appraisal on behalf of NuVeda. (Exhibit 2, Mot. to Vac. at pp. 6-7; Exhibit 20, Interim Award at p. 4). The Arbitrator found that Mr. Kennedy, on behalf of NuVeda, asked Mr. Webster "to establish the value of NuVeda LLC in accordance with procedure in the removal of its Manager Jennifer Goldstein who's total compensation is seven percent (7%)." (*Id*. at Exhibit 20, Interim Award at p. 4) (internal quotation marks omitted). Mr. Webster concluded



that NuVeda's assets were valued at $3,955,000.00. (Ex. 2, Mot. to Vac. at Exhibit 7, Webster Business Group Appraisal at pp. 1-2). The vast majority of this valuation was based on NuVeda's ownership interests in two subsidiaries holding cannabis licenses: its 35% interest in CWNV, LLC and its 100% interest in Clark Natural Medicinal Solutions, LLC. (*Id*.)

        2.    During the course of Arbitration, the parties submitted several expert additional reports opining on the value of Goldstein's interest in NuVeda. (Ex. 2, Mot. to Vac. at Exhibits 10-14 and 16-17. **All** of these expert reports arrived at their valuation of NuVeda based on the value of NuVeda's cannabis assets, including the cannabis licenses issued by the State of Nevada, and revenue derived from the operation of those cannabis assets through NuVeda's share of the CWNevada MIPA. (Ex. 2, Mot. to Vac. at Exhibit 10, pp. 25-43 and 119-123; Exhibit 11 at pp. 4-7 and 20-21; Exhibit 12 at pp. 4-5 and 8-19; Exhibit 13; Exhibit 14 at pp. 3-5; Exhibit 16; and Exhibit 17). The Arbitrator exercised her discretion to allow all of the expert reports submitted by all parties and to consider all expert testimony at the arbitration hearing.

        3.    Ultimately, the Arbitrator adopted the definition of "fair market value" to be "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." (*Id*. at p. 6). She then determined that the fair market value of NuVeda was $27,243,520.00, based in large part upon the value of NuVeda's share in the CWNevada MIPA and upon the value of the production and cultivation licenses held by Clark Medicinal (*Id*. at p. 10), that the fair market value of Goldstein's 7% ownership interest in NuVeda as of the date of her expulsion from NuVeda, was $2,051,215.38, and that NuVeda owes Goldstein that amount. (*Id*. at p. 11). The Arbitrator's award was clearly based on the value of cannabis assets owned by NuVeda through the CWNevada MIPA and/or through the Subsidiaries. (*Id*. at pp. 10-11).

        4.    On March 19, 2019, the Arbitrator issued the Final Award, which incorporated the findings set forth in the Interim Award. (Exhibit 2, Mot. to Vac. at Exhibit 21 "Final Award"). The Final Award awarded Goldstein $2,051,215.38 for her ownership interest in NuVeda, plus prejudgment interest and attorneys' fees and costs. (*Id*.)



5. On June 17, 2019, NuVeda filed a Motion to Vacate the Final Award in this Court. On September 6, 2019, the Court entered its Order denying NuVeda's Motion to Vacate, and confirmed the Arbitrator's Final Award. (**Exhibit 4**, Dkt. 126 in Case No. A-15-728510-C).

6. Following confirmation of the Final Award, Goldstein filed a Motion for Attorneys' Fees and Costs, which the Court granted, in part, and incorporated into its Order and Judgment, wherein the Court ordered that Goldstein was entitled to a judgment in an amount to include: (1) $2,426,163.80, which was the amount of the Final Award; (2) plus $112,68.53 in post-judgment interest accrued between the date of the Final Award and the date of entry of the Minute Order Granting Goldstein 's Motion for Entry of Judgment; (3) plus $26,944.08 in attorneys' fees and costs awarded by the Court pursuant to Goldstein's Motion for Attorneys' Fees and Costs. (**Exhibit 5**, Dkt. 139 in Case No. A-15-728510-C).

7. The Court therefore entered Judgment for Goldstein and against NuVeda in the amount of $2,565,276.41 (the "Judgment"). (*Id*.) Post-judgment interest continues to accrue on the Judgment, which now totals approximately $3 million. (Declaration of Brian R. Irvine, at ¶ 5).[2] NuVeda appealed the denial of its Motion to Vacate Goldstein's Arbitration award and the confirmation of that award, but the Nevada Supreme Court affirmed that decision. (**Exhibit 6**, Nevada Supreme Court Clerk's Certificate, Dkt. 153 in Case No. A-15-728510-C).

**C.** **Goldstein's Collection Efforts and the Motion to Appoint a Receiver over NuVeda**

1. Goldstein has been attempting to collect her Judgment against NuVeda for nearly two years, but NuVeda has failed to satisfy the Judgment; instead, NuVeda has consistently attempted to impede and frustrate Goldstein's collection activities. (**Exhibit 7**, Dkt. 179 in Case No. A-15-728510-C, Motion to Appoint Receiver at pp. 8-13).

2. A further obstacle to Goldstein's collection efforts is illustrated by the fact that NuVeda has agreed to sham confessed judgments in favor of its member's only days after Goldstein obtained her Arbitration award in an apparent effort to obtain priority over creditors of

---

[2] Goldstein filed her Proof of Claim in this Case on June 15, 2022, Claim No. 1 in the Claim Register, for $2,921,656.55 as of the Petition Date.



NuVeda, including Goldstein. Specifically, on March 27, 2019, NuVeda executed a Confession of Judgment in the amount of $1,462,300 in favor of 2113 Investors, LLC. (*Id*. at Exhibit 4, "2113 Confession"). 2113 Investors, LLC is a Nevada limited liability company that is owned by Joseph Kennedy, one of NuVeda's principals. (*Id*. at Exhibit 5, Nevada Secretary of State information for 2113 Investors, LLC; (*Id*. at Exhibit 6, Nevada Secretary of State information for NuVeda). On April 2, 2019, NuVeda executed a Confession of Judgment in the amount of $1,114,257.12 in favor of all three of NuVeda's principals, Pejman Bady, Pouya Mohajer and Joseph Kennedy. (*Id*. at Exhibit 7, "Bady, Mohajer and Kennedy Confession"; *see also id*. at Exhibit 6). These confessed judgments to NuVeda's insiders, which were not disclosed by NuVeda in response to the document requests contained in the Order Granting MSP, are suspect and certainly warrant investigation.[3]

3.      On March 7, 2022, Goldstein filed a Motion to Appoint Receiver over NuVeda and its affiliates and subsidiaries pursuant to NRS 32.010. (Exhibit 7, Motion to Appoint Receiver, Dkt. 179 in Case No. A-15-728510-B).

4.      In its Opposition to the Motion to Appoint a Receiver; NuVeda took the remarkable position that the proposed receivership was unnecessary because it had already transferred all assets out of NuVeda into a newly-formed Delaware entity. Specifically, NuVeda argued that it "does not own any assets other than nominal interests in CWNV LLC, CWNV1 LLC, Clark NMSD, LLC (i.e., The Sanctuary), and Nye Natural Medicinal Solutions, LLC ('Nye')." (**Exhibit 8**, Dkt. 190 in Case No. A-15-728510-C, Opposition to Motion to Appoint Receiver at p. 7).

5.      NuVeda claims that it "and its affiliates/subsidiaries reorganized on or about June 12, 2019" and "[t]he reorganization makes NuVeda, LLC, a Delaware limited liability company ('NuVeda DE'), the parent company of The Sanctuary and Nye." (*Id*.) NuVeda further alleges that "The Sanctuary and Nye appointed NuVeda DE as its sole and exclusive manager, which

---

[3] These Confessions of Judgment are not disclosed in the Schedules and SOFAs filed by the Debtor in this Case.



provides NuVeda DE in exchange for its services all profits from The Sanctuary and Nye (including those from their respective cannabis operations)." (*Id*. at 7-8).

6.      A simple examination of the "reorganization" referenced in NuVeda's Opposition to the state court receivership shows that NuVeda's principals transferred all of NuVeda's assets to NuVeda DE, with no consideration or value flowing to NuVeda for the transfer, and did so within a few months of Goldstein obtaining her Arbitration award in a clear effort to divest NuVeda of its assets and frustrate creditors, such as Goldstein.

7.      Pursuant to the terms of the Membership Interest Exchange and Contribution Agreement (the "NuVeda DE Agreement") dated June 12, 2019, Joseph Kennedy, Pejman Bady and Pouya Mohajer collectively owned 100% ownership interest in NuVeda. (Exhibit 8, Dkt. 190 in Case No. A-15-728510-C, Opposition to Motion to Appoint Receiver at Exhibit 4, the NuVeda DE Agreement at 1).

8.      The NuVeda DE Agreement provides that "NuVeda hereby redeems all of the right, title and interest of Kennedy, Bady and Mohajer in NuVeda in exchange for the membership interest of NuVeda in Clark NMSD and Nye . . ." (*Id*. at 2). The Agreement further provides that Kennedy, Bady and Mohajer "convey[ed] all of their right, title and interest in Clark NMSD and Nye to NuVeda DE in exchange for membership interest in NuVeda DE." (*Id*.) The NuVeda DE Agreement also purports to "fully release and discharge NuVeda, Clark NMSD, Nye and NuVeda DE of and from all . . . judgments . . . which any of the foregoing has as of" June 12, 2019. (*Id*. at 2-3).

9.      On its face, the NuVeda DE Agreement purports to strip NuVeda of all of its assets, and transfer the same assets, with the same individuals retaining their respective ownership interest, into the newly-formed NuVeda DE. The NuVeda DE Agreement also purports to release and discharge NuVeda DE of all of NuVeda's liability, including Goldstein's Judgment.[4] This,

---

[4] Moreover, while the NuVeda DE Agreement does contemplate regulatory approval for the transfer of the cannabis licenses, on information and belief, regulatory approval has not been obtained and remains pending before the Nevada Cannabis Compliance Board. Thus, under Nevada law, NuVeda DE cannot be the lawful owner of the cannabis licenses as contemplated in



according to NuVeda, rendered the appointment of a receiver over NuVeda improper and of no practical effect. However, NuVeda's Opposition only illustrated the need for a state court receiver, who could take steps to unwind NuVeda's fraudulent conveyance of assets, as NuVeda has consistently asserted that it owned the very (highly valuable) cannabis assets it transferred away for no value.

10.    In its state court Application/Petition Pursuant to NRS 31.070(5) and Request to Prohibit Goldstein from any further Collection Activity without Court Approval ("Application"), Clark and NuVeda requested an order from the state court prohibiting Goldstein from collecting cash from Clark pursuant to a writ of execution. In the Application, NuVeda argued that Goldstein "does not have the right to seize cash which belongs to The Sanctuary despite the parent/subsidiary relationship between NuVeda and The Sanctuary." (**Exhibit 9**, Dkt. 169 in Case No. A-15-728510-C, Application at 5) (emphasis added).

11.    NuVeda's prior position – that it was the parent of Clark (aka The Sanctuary) – was either patently false at the time it was made given the transaction set forth in the NuVeda DE Agreement, or NuVeda knows that the transaction contemplated in the NuVeda DE Agreement was ineffective.

12.    It has always been NuVeda's position in the state court cases, including the Goldstein case and the CWNevada receivership, that it owns the cannabis licenses in use at the locations where Goldstein has directed the writs of execution.

13.    A further example of NuVeda's prior state court representations that it owns cannabis assets is its Verified Complaint in state court Case No. A-17-755479-C (CWNevada Receivership Case), attested to by Pejman Bady. In that Verified Complaint, NuVeda alleges in that: "In 2014, NuVeda sought Medical Marijuana Establishment (hereinafter MME) Licenses through the State of Nevada MME application process." (**Exhibit 10**, Dkt. 2 in Case No. A-17-755479-C, Verified Complaint at ¶ 11).

―――――――――――――――― (continued)
the NuVeda DE Agreement.

14.     NuVeda further alleged that on or around November 2014, NuVeda won several MME licenses through the State of Nevada MME application process. (*Id*. at pp. 2:11-12 and 3:16-18).

15.     The Verified Complaint details the contractual agreement between and among NuVeda, CWNevada and 4Front, which it hired to "provide consultation and assistance to NuVeda in procurement of MME Licenses for NuVeda" (Exhibit 10, Verified Complaint at p. 9:7-8) and "train staff and manage NuVeda's MME Dispensary facilities." (*Id*. at p. 3:9-10.) NuVeda avers it had paid 4front $265,000.00 as of the date the Complaint was filed. (*Id*. p. 3:19)

16.     The Verified Complaint explains in detail NuVeda's efforts to fund the buildout of its dispensaries, and its various contractual wranglings, eventually alleging that 4Front damaged it, inter alia, by:

> delaying transfer of the four NuVeda licenses to CWNV, LLC as mandated by the CWNevada Purchase Agreement; delaying construction of NuVeda's MME facilities[…], causing NuVeda to incur significantly increased construction costs associated with the NuVeda MME facilities[…] [and] Damaging NuVeda's company value.

(Exhibit 10, Verified Complaint at p. 11:6-11.

17.     NuVeda made similar representations regarding its ownership of cannabis assets in filings made in the state court receivership of CWNevada: "The receiver claims in its filing that CWNevada did not receive any benefit from the joint venture with NuVeda. Apparently, the receiver is ignoring the money CWNevada pulled out of **NuVeda's dispensaries** while operating the same." (**Exhibit 11**, Dkt. 460 in Case No. A-17-755479-C, April 8, 2020 Supplement to NuVeda's Motion to Lift the Litigation Stay and Opposition to Receiver's Motion to Approve Retention of Counsel Sponsored by Phil Ivey and Related Matters at p. 6:18-19 (emphasis added); *id*. at p. 8:8 ("NuVeda is not subject to an agreement to sell **its licenses** to a third-party.") (emphasis added)); (**Exhibit 12**, Dkt. 136 in Case No. A-15-728510-B, October 9, 2019 Case Appeal Statement at p. 4:1-3 ("This matter involves an intra-company dispute by and between the members of NuVeda, a limited liability company **that was awarded and continues to possess**



**and conduct operations related to six marijuana licenses based in Clark County, Nevada**.")
(emphasis added).

18.    NuVeda also consistently confirmed its ownership in CWNV, which held several cannabis assets:

> This filing opposed the appointment of a receiver to the extent such receivership would include assets which are not owned by CWNevada (i.e., assets which are owned by NuVeda). The CIMA Group LLC ("CIMA") as an intervenor in this case provided notice that Department 27 of the Eighth Judicial District Court appointed a "temporary receiver or monitor over CWNevada, LLC, and its subsidiaries and affiliates (including, without limitation CWNV, LLC)" in Case No. A-18-773230-B ("CIMA Case"). CWNV, LLC is a dissolved Nevada limited liability ("CWNV"). NuVeda is the trustee of CWNV under NRS 86.541(2)1 and was not a party to the action in the CIMA Case. NuVeda plans to intervene in the CIMA Case to address the court's order, which CIMA wrongfully obtained. In the matter before this court, no party has asked for the appointment of a receiver over CWNV. CWNevada owned membership interests in CWNV. NuVeda does not oppose the appointment of a receivership over any distributions to be made to CWNevada as a result of winding down CWNV. However, NuVeda opposes the appointment of a receiver over CWNV and its assets, which are already being administered by NuVeda as the trustee.

(**Exhibit 13**, Dkt. 122 in in Case No. A-17-755479-C, June 14, 2019 Supplement to NuVeda's Limited Opposition to CIMA's Request for the Appointment of a Receiver Over CWNevada's Assets at p. 3:4-16) (citation omitted).

19.    NuVeda has also admitted that it is a cannabis company that owns significant cannabis assets in its proof of claim (and in other documents) filed in the state court receivership over CWNevada.

20.    CWNevada filed a voluntary Chapter 11 Petition in this Court on April 16, 2019 (*see* Case No. 19-12300-mkn at ECF No. 1), which was dismissed under 11 U.S.C. § 305.[5] (*Id*. at ECF No. 85).

21.    Following the dismissal of the CWNevada bankruptcy case, CWNevada was placed in a state court receivership ("CWNevada Receivership"), which is ongoing. (**Exhibit 14**, Order Appointing Receiver in Case No. A-17-755479-C at Dkt. 135)

---

[5] See discussion below for the basis of the Court's dismissal of the CWNevada bankruptcy case.



22.     In the CWNevada Receivership, NuVeda filed a proof of claim in the amount of $45 million. (**Exhibit 15**, "Receivership Proof of Claim" and "Notice of Receiver's Determination Regarding Claim") The Receivership Proof of Claim was based solely upon alleged damages stemming from an alleged breach by CWNevada of the CWNevada MIPA, pursuant to which NuVeda transferred the Nevada cannabis licenses owned by Nye and Clark NMSD (both of which were owned 100% by NuVeda) to "a newly formed company – CWNV – and that CWNevada would own a 65% membership in CWNV with NuVeda retaining a 35% ownership in CWNV." (*Id*. at June 30, 2019 Memo from Jason M. Wiley, Esq. at 1)

23.     The Receivership Proof of Claim also noted that NuVeda sued CWNevada over the alleged breach of the CWNevada MIPA, and that "[i]n conjunction with the filing of the complaint, the NuVeda Parties also filed an ex parte application for temporary restraining order and motion for preliminary injunction seeking relief from the court (a) enjoining CWNevada. CWNV and Padgett from continuing to operate the North Las Vegas Dispensary and City of Las Vegas Dispensary: (b) ceasing all business operations at the dispensaries until the NuVeda Parties could take possession of the dispensaries and operate and manage those dispensaries." (*Id*. at 2).

24.     The state court (prior to the CWNevada Receivership order being entered) had enjoined NuVeda and CWNevada "from selling, transferring, or otherwise disposing of any assets in their possession, custody, and/or control, including any Nevada cannabis license and cash received (except as needed for normal business operations) from the lawful sale of cannabis through their Nevada retail dispensaries until this Court orders otherwise." (**Exhibit 16**, Dkt. 45 in Case No. A-17-755479-C, March 14, 2019 Injunction at 2)

25.     It is abundantly clear, based on NuVeda's prior judicial admissions in the state court and rulings made in the state court, that NuVeda is a cannabis company with cannabis assets. NuVeda's claim that it has divested itself of those assets through the NuVeda DE MIPA is of no moment, as that Agreement clearly constituted a fraudulent transfer of valuable cannabis licenses that should be avoided in an Article 5 action should this Case proceed.

26.     NuVeda filed its Petition in this Case solely to avoid the state court receivership sought by Goldstein and the state court litigation with the Receiver for CWNevada, as NuVeda's



Petition was filed only hours before the state court was scheduled to hear Goldstein's request for the appointment of a receiver. (**Exhibit 17**, Dkt. 182 in Case No. A-15-728510-B, Notice of Hearing setting hearing on Goldstein's Motion to Appoint Receiver for April 12, 2022).

### D.  Assets and Revenue Sources Disclosed in the Schedules and SOFAs.

1. On April 11, 2022 ("Petition Date"), the Debtor commenced this Case by filing a voluntary petition under Subchapter V of Chapter 11.  [See Docket No. 1, p. 2 of 24; #8].

2. The Debtor filed its schedules ("Schedules) and statement of financial affairs ("SOFAs") on April 25, 2022 [Docket Nos. 17 & 18].

3. The Debtor's Schedules A/B disclose that:

    a.  The Debtor had and has no cash assets.

    b.  The Debtor had no bank accounts.

    c.  The Debtor holds 100% of the membership interests in CWNV LLC and CWNV1 LLC.

    d.  The Debtor asserts claims and causes of action against CWNevada and CW Nevada Receivership for $45 million.[6]

4. The SOFAs disclose that the Debtor has had no gross business revenue or non-business revenue, except for $875 in capital contributions in 2020, in the two years prior to the Petition Date.

## IV.  LEGAL DISCUSSION

Several Courts have held that a bankruptcy case must be dismissed if the continuation of the case would require the court, trustee, or debtor in possession to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA. *In re Burton*, 610 B.R. 633, 638 (9th Cir. BAP 2020) (collecting cases).

> The first section of the CSA shows that Congress enacted it in its "governmental interest in public health and safety." In that section, Congress finds and declares:

---

[6] These claims are all set forth in the Receivership Proof of Claim discussed above (Exhibit 15) and stem from an alleged breach by CWNevada of the CWNevada MIPA, pursuant to which NuVeda transferred the Nevada cannabis licenses owned by Nye and Clark NMSD.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect *on the health and general welfare of the American people."* 21 U.S.C. § 801(2) (emphasis added). Marijuana is a schedule-I controlled substance under the CSA. *See* CSA, 21 U.S.C. § 802(6) (defining a controlled substance to include any drug or substance "included in schedule I ... of this part B of this subchapter."); 21 U.S.C. § 812(c), Schedule I at (c)(17). A bankruptcy trustee would need to yield to the government's interests in protecting the public's health, as expressed by the CSA.

*In re Medpoint Management, LLC*, 528 B.R. 178, 185 (Bankr. D. AZ. 2015), vacated in part and on other grounds by *In re Medpoint Management, LLC,* 2016 WL 3251581 (9th Cir. BAP 2016).

The Bankruptcy Courts in this District have dismissed bankruptcy cases in which debtors either receive or propose to receive income from a source authorized to distribute or cultivate marijuana. *See, e.g., In re CWNevada*, 602 B.R. 717,727 n.24 (Bankr. D. Nev. 2019*); In re Pharmagreen Biotech, Inc*., Case No. 20-50780-BTB (Dkt 49).

The sole income derived to date by the Debtor is based on its cannabis business. Furthermore, the sole assets of the Debtor listed in its Schedules arise under and relate solely to the cannabis business. And, were this case to proceed, one of the Debtor's assets would be a Chapter 5 avoidance action to recover the valuable cannabis assets that NuVeda fraudulently transferred for no value via the NuVeda DE MIPA, which was clearly executed simply to move assets out of NuVeda to frustrate creditors such as Goldstein.

Dismissal of this Case is therefore appropriate under 11 U.S.C. § 305(a) and, alternatively, under 11 U.S.C. § 1112(b).

## A.    Dismissal Is Appropriate Under 11 U.S.C. § 305(a).

Dismissal of a Chapter 11 bankruptcy case pursuant to 11 U.S.C. § 305(a) is warranted when the "interests of creditors and the Debtor would be better served by dismissal of the case." *In re CWNevada LLC*, *supra* at 747. 11 U.S.C. § 305(a) provides in pertinent part:

The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—(1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]



Here, the sole creditors in this case, Goldstein, along with the Receiver for CWNevada, Shane Terry, and Phillip Ivey, all have pending state court actions against NuVeda that are currently stayed by this Case. The creditor parties and the Debtor would be better served[7] by allowing the state court actions to proceed and in a forum that is not limited or hampered by the Debtor's illegal business operations under the CSA. *In re CWNevada LLC*, *supra* at 747. Specifically, the state court receiver sought by Goldstein would be in the best position to recover fraudulently transferred assets for the benefit of NuVeda's creditors.

Furthermore, the Debtor has had no income for a number of years, including since the Petition Date. The Debtor's total lack of demonstrated financial capability to continue post-petition operations or to support a plan indicates that the best interests of creditors and the Debtor are better served by dismissal of this Case

### B.    Dismissal Is Also Appropriate Under 11 U.S.C. § 1112(b).

11 U.S.C. § 1112(b) provides the statutory framework for dismissal or conversion of a Chapter 11 case. It provides in relevant part, that

> (b)(1) ... after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

Subsection 1112(b) indicates that "cause" includes "gross mismanagement of the estate."

> A finding of "cause" in any context is, at bottom, an equitable determination. Congress specifically understood, in drafting. § 1112(b)'s list of factors that a court may consider in its determination of "cause" for dismissal or conversion, that it was not restricting a court's ability to consider other factors that are not enumerated there. The legislative history to § 1112 states that
>
> Subsection (b) gives wide discretion to the court to make an appropriate

---

[7] As of the 341 Meeting of Creditors that was completed on May 26, 2022, the Debtor had still not opened a debtor-in-possession account, which is required under the UST Guidelines. Unless the Debtor can open such an account with a approved depository, dismissal of this Case is warranted. *In re CWNevada LLC*, *supra* at 7444.



1
2
3

> disposition of the case when a party in interest requests.... The list [appearing in § 1112(b) ] is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.

4  H.R. REP. No. 95–595 at 406, 1978 U.S.C.C.A.N. 5963, 6362

5  *In re Rent-Rite Super Kegs West Ltd.*, 484 B.R. 799, 808-09 (Bankr. D. Colo. 2012).

6
7
8
9
10

The Debtor has engaged in business that exposes the Debtor and the Trustee with criminal liability and exposes the Debtor's assets to forfeiture under the CSA. Such exposure indicates gross mismanagement by the Debtor and provides cause for dismissal under Section 1112(b) of the Bankruptcy Code. *In re Rent-Rite Super Kegs West Ltd.*, *supra* at 809; *In re Malul*, 614 B.R. 699, 712 (Bankr. D. Colo. 2020).[8]

11
12
13
14
15
16

A number of courts have held that a bankruptcy filing or a plan of reorganization proposed by a debtor who is involved in an illegal enterprise is not in good faith, even where the debtor does not have a subjective bad motive, is in legitimate need of bankruptcy relief, and there are no other indicia of an attempt to abuse the bankruptcy process. *In re Burton*, supra at 638; *In re Arenas*, 535 B.R. 845, 852-533 (10th Cir. BAP 2015); *see also In re Rent-Rite Super Kegs W. Ltd.*, supra at 809.

17
18
19
20
21
22
23

Related to the good faith analysis, some courts have concluded that a debtor engaged in an illegal business who seeks bankruptcy relief comes into court with unclean hands and is not eligible for relief. *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959-60 (9th Cir. 2015); *In re Burton*, *supra* at 638; *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. at 807; *cf. In re Medpoint Mgmt., LLC*, supra at 186-87 (petitioning creditors who knew the putative debtor was engaged in a federally prohibited medical marijuana business had unclean hands and could not seek relief from the bankruptcy court).

24
25
26
27
28

---
[8] Pursuant to CSA § 853(a), all property, and proceeds of such property, obtained in violation of the CSA is subject to forfeiture.

Bankruptcy courts are courts of equity. A party, including a debtor, is not entitled to relief in this Court where it has unclean hands. *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956, 959-960 (9th Cir. 2015).

The Debtor's principal asset are its asserted claims against CWNevada in the CWNevada Receivership. Those claims are centered and dependent upon the alleged breach by CWNevada of the CWNevada MIPA, pursuant to which NuVeda transferred the Nevada cannabis licenses owned by Nye and Clark NMSD. The Debtor seeks to collect, as property of this Case and estate, those claims, all of which are based on cannabis business operations.

Although not listed as an asset in the Debtor's Schedules, the Debtor has colorable avoidance claims under the Bankruptcy Code and applicable state law against NuVeda DE and its members under the NuVeda DE Agreement, which purported to strip NuVeda of all of its assets, and transfer the same assets, with the same individuals retaining their respective ownership interest, into the then newly-formed NuVeda DE, with no value received by NuVeda, let alone fair value. The Debtor would necessarily invoke the power and jurisdiction of this Court to avoid and recover cannabis-business assets that were inappropriately transferred to NuVeda DE.  This Court cannot administer assets that are illegal under the CSA. "[A] bankruptcy case must be dismissed if the continuation of the case would require the court, trustee, or debtor in possession to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA. *In re Burton*, *supra* at 638.

The Debtor may assert that it is no longer engaged in the cannabis business and is not subject to the CSA. However, this same argument was made to and rejected by the Bankruptcy Appellate Panel of the Ninth Circuit in the *Burton* case. There, the Debtors owned an interest in Agricann, a cannabis business that was allegedly closed and not operating. However, the Debtors had litigation claims against that entity.

> It is undisputed that the [debtors] own an interest in Agricann, an entity that was engaged in a business that is illegal under federal law, and that interest became property of the estate when they filed their [bankruptcy] petition. Whether Agricann is currently actively engaged in growing or selling marijuana is irrelevant, given that Agricann is a plaintiff in litigation seeking to recover

damages consisting at least in part of profits lost as a result of breaches of contracts related to the growing and selling of marijuana. As such, any proceeds received from the litigation would represent profits from a business that is illegal under federal law.

. . . .

The [debtors] failed to demonstrate that their ties to Agricann would not result in proceeds of an illegal business becoming part of the bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA.

*In re Burton, supra* at 639-41. *See also In re Malul*, *supr*a at 710-715 (Under CSA § 854, it is illegal to invest in a cannabis business. The lack of ongoing cannabis operations, misses the *ab initio* illegality upon entry into the investment.).

As shown by the Receivership Proof of Claim, the Debtor's principal asset relates to its alleged damages stemming from an alleged breach by CWNevada of the CWNevada MIPA, pursuant to which NuVeda transferred the Nevada cannabis licenses owned by Nye and Clark NMSD (both of which were owned 100% by NuVeda) to CWNV[9], with CWNevada would own a 65% membership in CWNV and NuVeda retaining a 35% ownership in CWNV. Under CSA § 854, it was and is illegal for NuVeda to invest in CWNW.

/ / /

/ / /

/ / /

/ / /

---

[9] CWNV is listed as an asset in the Debtor's Schedules.



## V.    CONCLUSION

Based on the foregoing, this Case should be dismissed as the Debtor's business operations and the ownership of its existing assets would constitute a violation of the CSA, and the continuation of the Case would require the Court, the Trustee, and the Debtor, as a Debtor in Possession, to administer assets that are illegal under the CSA.

Dated this 29th day of June, 2022.

DICKINSON WRIGHT PLLC


*/s/ Brian R. Irvine*
BRIAN R. IRVINE
WILLIAM L. NOVOTNY
100 West Liberty Street
Suite 940
Reno, Nevada 89501

*Attorneys for Jennifer M. Goldstein*

4862-1194-3461 v2 [88728-1]

