**Fill in this information to identify the case:**

Debtor Name  NuVeda, LLC, a Nevada limited liability company

United States Bankruptcy Court for the: District of Nevada

Case number: BK-22-11249-abl

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11                   02/20

**Debtor's Plan of Reorganization, Dated July 11, 2022**

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The Debtor is a Nevada limited liability company. The Debtor was involved in the cannabis industry through its ownership of subsidiaries licensed under Nevada law to operate dispensaries, production, and cultivation facilities.  The Debtor divested itself of its interests through a membership interest exchange and contribution agreement made effective on June 12, 2019. The divestment was required so that these subsidiaries could enter into a subsequent transaction with Urban Leaf which was required to roll up the subsidiaries in a consolidation, merger or public offering.

The Debtor had disputes with former partners, including Jennifer Goldstein, Shane Terry, Phil Ivey and CWNevada, LLC, which were not resolved by the Cannabis Divestment.  On November 15, 2019, Ms. Goldstein obtained a judgment against the Debtor in the amount of $2,565,276.41, plus post-judgment interest.  In January 2020, Ms. Goldstein obtained a charging order on all distributions arising from the Debtor's membership interests in its purported subsidiaries.  In 2021, Ms. Goldstein served writs of execution on cannabis establishments in which the Debtor no longer had an interest. On March 7, 2022, Ms. Goldstein filed a motion with the Nevada state court seeking the appointment of a receiver for the Debtor. Faced with escalating litigation costs and complexity, on April 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code in this Court. [ECF No. 1] The Debtor has continued and is managing its affairs as a debtor in possession pursuant to Bankruptcy Code section 1184.  On April 14, 2022, Edward M. Burr was appointed as Subchapter V Trustee for the Debtor.  [ECF No. 10]. No request has been made for the appointment of a chapter 11 trustee, an examiner or any official committee.

Debtor's reputation in the cannabis industry made it an excellent vehicle to continue the medical research of Drs. Pejman Bady and Pouya Mohajer (principals of Debtor) and their desire to provide care to patients using cannabidiol (CBD), which does not contain tetrahydrocannabinol (THC)--the psychoactive ingredient found in cannabis that produces a "high" and is illegal under federal law.  Drs. Bady and Mohajer believe CBD provides an excellent alternative to opioids, which are a class of prescription drugs used to reduce pain but have series side effects and are often times abused by patients.  This abuse has resulted in a public health emergency, which Drs. Bady and Mohajer believe can be combated by use of CBD as alternative.  However, CBD shows limited bioavailability due to its lipophilicity and extensive first-pass metabolism. Drs. Bady and Mohajer believe VESIsorb® technology will mitigate this effect and also significantly improve pharmacokinetic performance compared to standard industry practices.  Debtor plans to capitalize on the research of Drs. Bady and Mohajer by producing, marketing, and selling a proprietary CBD VESIsorb® formulation to medical care providers as a substitute for opioids including to clinics like PriMMed--a pain management facility owned and operated by Drs. Bady and Mohajer.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit 1**.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.
The Plan Proponent has provided projected financial information as **Exhibit 2**.
The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $1,337,480.
The final Plan payment is expected to be paid on or before December 31, 2025.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Debtor Name   NuVeda, LLC, a Nevada limited liability company            Case number  BK-22-11249-abl

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of NuVeda, LLC, a Nevada limited liability company (the *Debtor*), initially from a $500,000 loan by one or more of the Debtor's equity security holders, and thereafter with disposable income from the Debtor's operations.

This Plan provides for:

| | |
|---|---|
| 1 | classes of priority claims; |
| 0 | classes of secured claims; |
| 1 | classes of non-priority unsecured claims; and |
| 1 | classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 40 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01 **Class 1** ............................ All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

[Add classes of priority claims, if applicable]

2.02 **Class 2** ............................ All non-priority unsecured claims allowed under § 502 of the Code.

2.03 **Class 3** ............................ Equity interests of the Debtor.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 **Unclassified claims**       Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02 **Administrative expense claims**       Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the effective date of this Plan (or the date such claim is allowed, whichever is later), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtor Name   NuVeda, LLC, a Nevada limited liability company   Case number BK-22-11249-abl

| | | |
|---|---|---|
| 3.03 **Priority tax claims** | The Debtor is not aware of any priority tax claims. If any priority tax claim is allowed it will be paid consistent with § 1129(a)(9)(C) of the Code. |
| 3.04 **Statutory fees** | The Debtor is not responsible for any fees under 28 U.S.C. § 1930. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | The Debtor is not aware of any Class 1 Priority Claims. If any Class 1 Priority Claim is allowed, the holder thereof will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. Class 1 is deemed to accept the Plan. |
| Class 2 – **Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Each holder of a Class 2 Allowed general unsecured, non-priority claim shall receive its *pro rata* share of the sum of $105,206.75 per calendar quarter, or such other amount as the Court may require at the confirmation hearing on the Plan and as consistent with §§ 1190 and 1191 of the Code, in full satisfaction of such claim. Payments shall commence on the 15th day of the third month following the Effective Date, and continue on the same date each calendar quarter thereafter for a total of 12 calendar quarters during the 36 month term of the Plan. Class 2 is entitled to vote on the Plan. |
| Class 3 - **Equity security holders of the Debtor** | ☐ Impaired<br>☒ Unimpaired | Each holder of Class 3 Equity Security Interests shall retain such Equity Security Interests consistent with the powers, rights, and restrictions imposed and granted under the Debtor's operating Agreement. Class 3 is deemed to accept the Plan. |

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection on or before ninety (90) days after the Effective Date; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed. |
| 5.03 **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes the following executory contracts and unexpired leases as of the effective date:<br>    Operating Agreements for CWNV LLC and CWNV 1 LLC; Indemnification by CW Nevada, LLC (both as listed on Schedule G [ECF No. 17]). |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

The Plan initially will be funded with a $500,000 unsecured loan advanced on the Effective Date by one or more of the Debtor's equity security holders. The loan will have an interest rate of 9% per annum, and payments of principal and interest amortized over a 5-year term will be due monthly by the Debtor.

The Debtor's managers as of the Petition Date will continue in such capacity post-confirmation.

### Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate governance** | The Debtor does not and shall not have any non-voting equity securities. |

| | | | |
|---|---|---|---|
| Debtor Name | NuVeda, LLC, a Nevada limited liability company | Case number | BK-22-11249-abl |

[8.08] **Retention of Jurisdiction**  The Bankruptcy Court shall retain jurisdiction following the Effective Date over all matters encompassed by 28 U.S.C. § 157(b)(2)(A)-(C), (L) & (O).

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:
  (i) imposed by this Plan; or
  (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
  (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
  (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

1. **Prepayment**. The Debtor may prepay any Allowed claims under the Plan in advance and without prepayment penalty.

2. **Modified Treatment**. A holder of an Allowed claim in any Class may voluntarily agree to a less favorable treatment of its claim than is as set forth in the Plan; provided, however, that such agreement must be in writing and signed by both the Debtor and that party.

3. **Interest**. No interest shall be paid under the Plan.

4. **Disallowance of Claims Not Allowed and Tardy Proofs of Claim**. The occurrence of the Effective Date shall operate to disallow and expunge any claims of any creditor who received actual notice of the Chapter 11 Case and that: (a) were not listed on the Debtor's filed bankruptcy schedules and for which no proof of claim was filed on or prior to the applicable bar date; (b) were listed on the Debtor's schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed on or prior to the applicable bar date; (c) are the subject of a proof of claim for a pre-petition claim that was filed after the applicable bar date.

5. **Elimination of Vacant Classes**. Any class of claims that is not occupied as of the date of the commencement of the confirmation hearing by an Allowed claim or a claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class.

6. **Plan Distributions**. The Reorganized Debtor shall make all payments required under the Plan to creditors itself and directly.

7. **Compensation of Subchapter V Trustee**. The Subchapter V Trustee shall be entitled to reasonable compensation of fees for services rendered and reimbursement of actual and necessary expenses incurred through the Effective Date of the Plan pursuant to and consistent with § 330(a)(1) of the Code.

8. **Post-Confirmation Quarterly Reports**. From and after the Effective Date, the Debtor shall file post-confirmation quarterly operating reports until the case is closed consistent with the United States Trustee Chapter 11 Operating and Reporting Guidelines for Debtors in Possession for Region 17.

9. **Local Rule 3022 Inapplicable**. Local Rule 3022 shall not apply to this Debtor or this Plan, and thus this Chapter 11 Case will not be deemed fully administered 180 days after Plan confirmation pursuant to that Local Rule, and thus the Clerk shall not enter a final decree without further notice pursuant to that Local Rule.

10. <u>Plan Injunction</u>. Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order, but subject to the occurrence of the Effective Date, all persons who have held, hold, or may hold claims against or interests in the Debtor and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are permanently enjoined after the entry of the Confirmation Order from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, the Debtor, the Reorganized Debtor, or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Reorganized Debtor, or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan.

11. <u>Exculpation</u>. To the fullest extent permitted by applicable law, neither the Debtor nor any of its representatives shall have or incur any liability to any holder of a claim or equity interest against the Debtor, or any other party-in-interest, for any act, omission, transaction or other occurrence occurring on or after the Petition Date in connection with or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, including without limitation, the administration of the Plan or the property to be distributed under the Plan, except and solely to the extent such liability is based on fraud, gross negligence, or willful misconduct as determined by a final order, but in all respects such persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. This exculpation is in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpated parties from liability.

12. <u>Retention of Causes of Action/Reservation of Rights</u>. Nothing herein or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtor or the Reorganized Debtor may have or which the Reorganized Debtor may choose to assert on behalf of their estate under any provision of the Code or any applicable nonbankruptcy law, including (i) any and all claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Debtor, the Reorganized Debtor, or their officers, directors, or representatives and (ii) for the turnover of any property of the Debtor's estate. Nothing herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Petition Date, against or with respect to any claim left unimpaired by the Plan. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses that they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights with respect to any claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced. In accordance with § 1123(b)(3) of the Code, any causes of action that a Debtor may hold against any entity shall vest in the Reorganized Debtor in accordance with the terms hereof. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such causes of action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No entity may rely on the absence of specific reference in the Plan to any cause of action against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available causes of action against them. Unless a cause of action is expressly waived, relinquished, released, compromised or settled in the Plan, or any final order, the Debtor on behalf of itself expressly reserves all causes of action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any causes of action upon confirmation or the Effective Date. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all causes of action against any person or entity, except as otherwise expressly provided herein.

13. <u>Exemption from Transfer Taxes</u>. Exemption from Transfer Taxes. Pursuant to § 1146(c) of the Code, (i) the issuance, distribution, transfer or exchange of estate property; (ii) the creation, modification, consolidation or recording of any security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with the Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of any instrument of transfer under, in furtherance of, or in connection with, the Plan,

Debtor Name  NuVeda, LLC, a Nevada limited liability company    Case number  BK-22-11249-abl

Confirmation Order or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**14. Procedure for Obtaining Discharge if Plan Confirmed Pursuant to § 1191(b).** If the Plan is confirmed pursuant to § 1191(b) of the Code, then after completing all required payments under the Plan, the Debtor may seek a discharge pursuant to § 1192 of the Code by filing a motion with the Bankruptcy Court that is noticed for hearing and served on all creditors and parties in interest, with an opportunity to object, together with a declaration certifying that all payments required under the Plan have been made.

**15. Immediate Binding Effect.** Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, the holders of Claims and Interests, and each of their respective successors and assigns.

**16. Entire Agreement.** The Plan, as described herein, and exhibits hereto, set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, understandings or representations with respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafter be agreed by the parties in writing.

Respectfully submitted,

x _____    Dr. Pejman Bady, Manager of Debtor
[Signature of the Plan Proponent]    [Printed Name]

x _/s/ Mitchell Stipp_____    Mitchell Stipp
[Signature of the Attorney for the Plan Proponent]    [Printed Name]

# EXHIBIT 1
# LIQUIDATION ANALYSIS

Consistent with the Debtor's Schedules of Assets and Liabilities [ECF No. 17], the Debtor does not anticipate that any value would be available for distribution to creditors in a liquidation under Chapter 7 of the Bankruptcy Code.

# EXHIBIT 2
# FINANCIAL PROJECTIONS

**NuVeda, LLC**
**Projected Profit & Loss Statement (Years 1-3)**

|  | Years | | | Total |
|---|---:|---:|---:|---:|
|  | 1 | 2 | 3 |  |
| **Total Revenue from the Sale of Product** | 1,729,020 | 2,593,529 | 3,890,294 | 8,212,843 |
| **Less: Cost of goods sold** | | | | |
| Rent Expenses | 60,000 | 60,000 | 60,000 | 180,000 |
| Other fixed FOH | 240,000 | 240,000 | 240,000 | 720,000 |
| Supplies & Materials | 86,451 | 129,676 | 194,515 | 410,642 |
| Raw Materials & Ingredients | 172,902 | 389,029 | 583,544 | 1,145,475 |
| Shipping, Freight & Delivery | 345,804 | 207,482 | 311,224 | 864,510 |
| Lab Testing | 259,353 | 311,224 | 466,835 | 1,037,412 |
| **Total Cost of goods sold** | 1,164,510 | 1,337,412 | 1,856,118 | 4,358,039 |
| COGS (%age) | 67% | 52% | 48% | 53% |
| **Equals: Gross Profit** | 564,510 | 1,256,118 | 2,034,176 | 3,854,804 |
| Gross Profit (%age) | 33% | 48% | 52% | 47% |
| **Less: Operating Expenses** | | | | |
| Advertisement & Marketing | 86,451 | 207,482 | 311,224 | 605,157 |
| Research & Development - Cost of study | 62,000 | - | - | 62,000 |
| Bank Charges & Fee | 8,645 | 12,968 | 19,451 | 41,064 |
| Cleaning Service | 4,323 | 6,484 | 9,726 | 20,532 |
| Insurance | 15,000 | 15,000 | 15,000 | 45,000 |
| Job Supplies | 173 | 259 | 389 | 821 |
| Meals & Entertainment | 6,916 | 10,374 | 15,561 | 32,851 |
| Medical | 21,613 | 25,935 | 38,903 | 86,451 |
| Membership Dues & Subscriptions | 200 | 200 | 200 | 600 |
| Office Supplies & Software | 25,935 | 32,419 | 48,629 | 106,983 |
| Payroll Expenses | 172,902 | 194,515 | 291,772 | 659,189 |
| Rent & Lease | 86,451 | 64,838 | 97,257 | 248,547 |
| QuickBooks Payment Fee | 2,000 | 2,000 | 2,000 | 6,000 |
| Repairs & Maintenance | 51,871 | 51,871 | 77,806 | 181,547 |
| Shipping supplies & materials | 34,580 | 51,871 | 77,806 | 164,257 |
| Licenses | 5,000 | 5,000 | 5,000 | 15,000 |
| Utilities expenses | 25,935 | 25,935 | 38,903 | 90,774 |
| Misc. Expenses | 17,290 | 12,968 | 19,451 | 49,709 |
| **Total Operating Expenses** | 627,285 | 720,119 | 1,069,078 | 2,416,482 |
| **Operating Profit** | (62,775) | 535,999 | 965,098 | 1,438,322 |
| Less: Exit Financing Debt Service | 41,635 | 33,857 | 25,349 | 100,842 |
| **Disposable Income** | (154,410) | 502,142 | 939,749 | 1,337,480 |
| Less: Administrative/Priority Claims (incl. Class 1) | 75,000 | - | - | 75,000 |
| Less: General Unsecured Claims (Class 2) | 420,827 | 420,827 | 420,827 | 1,262,480 |
| **Payments Under Plan** | 495,827 | 420,827 | 420,827 | 1,337,480 |