DICKINSON WRIGHT PLLC
BRIAN R. IRVINE
Nevada Bar No. 7758
WILLIAM L. NOVOTNY
(admitted *pro hac vice*)
100 West Liberty Street
Suite 940
Reno, Nevada 89501
Tel.: (775) 343-7500
Fax:  (844) 670-6009
Email: birvine@dickinsonwright.com
wnovotny@dickinson.com

*Attorneys for Jennifer M. Goldstein*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA
## LAS VEGAS DIVISION

| | |
|---|---|
| In re | Case No. 22-11249-abl |
| NUVEDA LLC, A NEVADA LIMITED LIABILITY COMPANY | Chapter 11 |
| Debtor. | **Hearing: September 7, 2022, at 1:30 p.m.** |

### <u>REPLY RE JENNIFER M. GOLDSTEIN'S MOTION TO DISMISS BANKRUTPCY CASE</u>

Jennifer M. Goldstein ("Ms. Goldstein"), by and through her undersigned counsel, hereby submits her Reply regarding her *Motion to Dismiss Bankruptcy Case* [Docket No. 69] ("Motion") and regarding the *Omnibus Objection to (I) Motion to Dismiss Bankruptcy Case; and (II) Related Joinders* [Docket 118] ("Objection") filed by the Debtor, NuVeda LLC. (alternatively "Debtor" or "NuVeda"). The Debtor's Objection includes a number of legal and factual inaccuracies and, most importantly, wholly ignores the fact that continuation of this Case[1] would require this Court, the Subchapter V Trustee, and the Debtor to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA. Accordingly, this case must be dismissed.

---

[1] Terms defined in the Motion shall have the same meaning here unless noted otherwise.



A. **CANNIBIS-RELATED ASSETS WILL NECESSARILY BE ADMINISTERED BY THE COURT, THE TRUSTEE AND THE DEBTOR.**

Since its formation as a Nevada limited liability company, the Debtor's business purpose has been the creation, management, licensing, advising, consulting, and investment in the cannabis business. Although the Debtor asserts that it does not intend to operate a cannabis-related business in the future, the sole meaningful assets of this Estate – including as disclosed in the Debtor's Schedules -- involve the Debtor's claims and causes of action that all involve and relate to the cannabis industry. The continuation of this Case would require the Court, the Trustee, and the Debtor, as a Debtor in Possession, to administer assets that are illegal under the CSA.

1. *The Stated Claims of the Debtor in the CWNevada Receivership Are All Cannabis Related.*

In its Schedules [Docket No. 17], the Debtor states, under oath, that it has a claim in the CWNevada Receivership for the sum of $45 million. These claims are all set forth in the Receivership Proof of Claim[2] and stem from an alleged breach by CWNevada of the CWNevada MIPA, pursuant to which NuVeda transferred the Nevada cannabis licenses owned by Nye and Clark NMSD.

The Receivership Proof of Claim has been initially denied by the Receiver for CWNevada. However, and as the Debtor acknowledges in the Objection, it can still seek the allowance of the Receivership Proof of Claim in the CWNevada Receivership. Specifically, the state court that is administering the receivership of CWNevada entered its Order Approving Claims Process, which provides for evidentiary hearings in order to resolve the objections that claimants (including Debtor) have regarding the CWNevada Receiver's determination of claims. (*See* Declaration of Brian Irvine ("Irvine Decl."), filed contemporaneously herewith; Irvine Decl. at **Exhibit 1**, January 20. 2020 Order Approving Claims Process, Dkt. No. 284 in Case No. A-

---

[2] The Receivership Proof of Claim in the amount of $45 million (Exhibit 15 to *Declaration of Brian R. Irvine* [Docket No. 70] was based solely upon alleged damages stemming from an alleged breach by CWNevada of the CWNevada MIPA, pursuant to which NuVeda transferred the Nevada cannabis licenses owned by Nye and Clark NMSD.

17-755479-B ("CWNevada Receivership Case") at p. 5, ¶¶22-25). In addition, Debtor remains in active litigation with the CWNevada Receiver related to Debtor's failed joint venture with CWNevada whereby Debtor and CWNevada agreed to work together to operate under several Nevada cannabis licenses held by Debtor through its subsidiaries. (*See* Irvine Decl. at **Exhibit 2**, October 18, 2021 Second Amended Complaint, Dkt No. 1088 in CWNevada Receivership Case; *see also id*. at **Exhibit 3**, March 24, 2022 Renewed Motion to Consolidate Case No. A-15-728510-B (Department 31) with Receivership Action Case No. A-755479-B (Department 13), Dkt. No. 1183 in CWNevada Receivership Case at p. 9 (where Debtor states that intends to add Ms. Goldstein as a defendant to its existing litigation with CWNevada). Thus, Debtor has multiple avenues in state court to litigate its claims against CWNevada.

      Despite these available remedies, the Debtor also argues that it can and intends to abandon the Receivership Proof of Claim as part of its not-yet-filed amended Plan of Reorganization. The Debtor boldly seeks to abandon a claim that it said – under oath in the Schedules -- was worth $45 million and that it firmly believes has merit – in the Opposition -- solely so that it can argue that this Case should not be dismissed.[3] The bad faith of the Debtor is palpable.

      Furthermore, assuming that the Debtor actually seeks to abandon the Receivership Proof of Claim, that process necessarily requires the administration of that asset by this Court. Under Section 554(a), the Debtor, after notice and hearing, can seek the abandonment of property of this Estate that is either burdensome to the Estate or that is of inconsequential value to the Estate. And, under Section 554(d) of the Bankruptcy Code, all property of the Estate – including the Receivership Proof of Claim – remains property of the Estate unless the "court orders otherwise".

      Thus, if and when the Debtor seeks to abandon the Receivership Proof of Claim, the Debtor and this Court will be dealing with and administering the Receivership Proof of Claim,

---

[3] Although the Debtor may not receive 100 cents on the dollar for its Receivership Proof of Claim, if allowed in the CWNevada Receivership, there is nothing to suggest that some recovery may not be made for the benefit of the creditors of this Estate.



addressing factual questions of burdensomeness, value, and benefit and the legal questions of the application of Section 554 and other sections of the Bankruptcy Code.

It is well recognized in the 9th Circuit and elsewhere that a bankruptcy case must be dismissed where the continuation of the case would require the Court, the Trustee, or the Debtor to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA. *In re Burton*, 610 B.R. 633, 638 (9th Cir. BAP 2020) (collecting cases).

The Debtor here, like the debtors in Ninth Circuit BAP decision in the *Burton* case, asserts that it is no longer involved in the cannabis business. The Ninth Circuit BAP rejected that argument, pointing out that the debtors in that case – like the Debtor in this Case --

> is a plaintiff in litigation seeking to recover damages consisting at least in part of profits lost as a result of breaches of contracts related to the growing and selling of marijuana. As such, any proceeds received from the litigation would represent profits from a business that is illegal under federal law.

*In re Burton, supra* at 639-41 ("The [debtors] . . . ties to [the cannabis business] would [involve] proceeds of an illegal business becoming part of the bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA"). *See also In re Malul*, 614 B.R. 699, 714-715 (Colo. Bankr. 2020) (Under CSA § 854, it is illegal to invest in a cannabis business. The lack of ongoing cannabis operations, misses "the *ab initio* illegality" upon the debtor's entry into an investment in a cannabis-related business.).

> **2. The Debtor and This Estate Have Significant Avoidance Claims Under Chapter 5 of the Bankruptcy Code, All of Which Involve the Transfer of Cannabis-Related Assets and Investments.**

In June of 2019, after Ms. Goldstein had received her significant Arbitrator's Final Award against the Debtor, the Debtor "reorganized" its affairs to attempt to ensure that it was asset-less. The Debtor euphemistically describes this as a "divestment". What it was in reality was a transfer of the Debtor's assets for nothing of value, marked by many indicia of fraud.

The transactions are described in the NuVeda DE Agreement dated June 12, 2019 (Irvine Decl. at **Exhibit 4**). Prior to the NuVeda DE Agreement, the Debtor owned all of the membership interests in Clark NMSD and Nye, which, in turn, owned valuable cannabis licenses in the State



of Nevada. As described in the NuVeda DE Agreement, the individual members of the Debtor purported to redeem their membership interests in direct exchange for Debtor's membership interests in its subsidiaries, Clark NMSD and Nye, and then purported to transfer those interests to a newly formed and conveniently, yet confusingly, named Delaware limited liability company, NuVeda, LLC ("NuVeda DE").[4] There is no stated or colorable consideration in the NuVeda DE Agreement that would devolve to or benefit the Debtor.

The timing of the NuVeda DE Agreement in June 2019 is far from coincidental. The Arbitrator's Final Award in favor of Ms. Goldstein had been issued on March 19, 2019, awarding Ms. Goldstein $2,051,215.39 for her ownership interests in the Debtor (Irvine Decl. at **Exhibit 5**). Subsequently, on November 15, 2019, the State Court entered the Judgment for Ms. Goldstein in the amount for $2,565.276.41, plus accruing post-judgment interest (Irvine Decl. at **Exhibit 6**).

The alleged transfer of the cannabis-related assets (the valuable membership interests in Clark NMSD and Nye) carried all of the indicia of an "actual fraud" fraudulent transfer, under Nevada's Uniform Fraudulent Transfer Act.[5]

**NRS 112.180**

1. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or
        . . . .

---

[4] It must be noted that the Nevada Cannabis Compliance Board ("CCB") advised this Court that "there has been no allegation nor assertion that Debtor obtained regulatory approval from any Nevada state agency, including the CCB, for the transfer of Debtor's interests in Clark NMSD and Nye Naturals to NuVeda DE" and that, as of July 18, 2022 "the CCB's records reflect Debtor, not NuVeda DE, as the parent company that owns both Clark NMSD and Nye Naturals." (ECF No. 92 at 3).

[5] The Debtor or the Trustee can invoke the standing and powers set forth in Section 544 of the Bankruptcy Code in order to pursue claims under Nevada's Uniform Fraudulent Transfer Act, which allows for the avoidance of a transfer made no later than 4 years before the commencement of the avoidance litigation. NRS § 112.230.



    2. <u>In determining actual intent</u> under paragraph (a) of subsection 1, <u>consideration may be given, among other factors, to whether</u>:

    (a) <u>The transfer or obligation was to an insider</u>;

    (b) The debtor retained possession or control of the property transferred after the transfer;

    (c) The transfer or obligation was disclosed or concealed;

    (d) <u>Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit</u>;

    (e) The transfer was of substantially all the debtor's assets;

    (f) The debtor absconded;

    (g) <u>The debtor removed</u> or concealed <u>assets</u>;

    (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

    (i) <u>The debtor was insolvent or became insolvent shortly after</u> the transfer was made or the obligation was incurred;

    (j) <u>The transfer occurred shortly before or shortly after a substantial debt was incurred</u>; and

    (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

(Emphasis added).

Here, the alleged transfers set forth in the NuVeda DE Agreement solely involved insiders. Before the NuVeda DE Agreement was executed in June 2019, the Debtor was the subject of significant litigation claims by Ms. Goldstein, who had already received the March 19, 2019 Arbitrator's Final Award of $2,051,215.39 for her ownership interests in the Debtor. While the parties were litigating the form and entry of the Judgment that was eventually entered in favor of Ms. Goldstein on November 15, 2019, the Debtor and its insiders secretly entered into the NuVeda DE Agreement. The Debtor concealed the transfers in the NuVeda DE Agreement



until March 2022, just as Ms. Goldstein was seeking a receivership for the Debtor in State Court in March 2022, which was also on the eve of filing this Case.[6]

In addition, there are colorable avoidance claims arising out of the NuVeda DE Agreement based on constructive fraud under Nevada's Uniform Fraudulent Transfer Act:

**NRS 112.180**

1. <u>A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation</u>:

. . . .

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due.

The NuVeda DE Agreement provided neither consideration nor reasonably equivalent value for the transfer to insiders of the Debtor's interests in its valuable subsidiaries, Clark NMSD and Nye. There is little doubt about the insolvency of the Debtor, as disclosed, in part, in the Debtor's Schedules and its propounded Plan of Reorganization [Docket Nos. 17 and 89].

The Debtor in its Opposition again attempts to wave the abandonment wand regarding the Chapter 5 avoidance claims, by asserting that it will file an amended Plan of Reorganization that would abandon those avoidance claims. First, that assertion shows a lack of good faith, which would prevent the confirmation of that yet-to-be-filed Plan. 11 U.S.C. § 1129(a)(3). Second, that request for abandonment of the avoidance claims would necessarily involve this Court and the Debtor in the administration of cannabis-based assets.

---

[6] See *Declaration of Brian R. Irvine* [ECF No. 70 (Exhibit 8, Dkt. 190 in Case No. A-15-728510-C, Opposition to Motion to Appoint Receiver at p. 7)].



1  There is strong evidence of the substantial value of those cannabis-based assets. After hearing extensive valuation testimony from experts, the Arbitrator determined in her Interim Award issued February 2019 that the fair market value of the Debtor (when it owned Clark NMSD and Nye (and their cannabis licenses)) to be $27,243,320 (*See* Irvine Decl. at **Exhibit 7**).

**B.  THE DEBTOR HAS FAILED OR IS UNABLE TO OPEN A DEBTOR-IN-POSSESSION BANK ACCOUNT.**

As demonstrated by the Monthly Operating Reports filed in this Case, the Debtor has failed to open a debtor-in-possession bank account and has generated no income of any kind during the post-petition period [See Docket Nos. 30, 62, and 104].[7] As a Subchapter V debtor, NuVeda is required to use and file Official Form 425C, which requires the attachment of bank statements regarding the debtor-in-possession accounts. None of the Monthly Operating Reports filed by the Debtor include bank statements, confirming that the Debtor has failed or is unable to open post-filing operating accounts.

This provides further cause for dismissal of this Case under 11 U.S.C. § 1112(b).

**C.  THE INDEMNIFICATION PROVIDED BY CWNevada DOES NOT PREVENT OR RESTRICT THE PAYMENT OR TREATMENT OF MS. GOLDSTEIN'S CLAIM IN THIS CASE.**

Although the relevancy of the argument in response to Ms. Goldstein's Motion is murky, the Debtor asserts in the Opposition that Ms. Goldstein's Judgment and her Proof of Claim filed in this Case, which is based on that Judgment, cannot be paid or settled in this Case. The Debtor relies on the Indemnification Agreement date June 5, 2018, between the Debtor and CWNevada, by which CWNevada agreed to indemnify the Debtor for Ms. Goldstein's claims against the Debtor (*See* Irvine Decl. at **Exhibit 8**).

Ms. Goldstein was not a party to the Indemnification Agreement and is not bound by its terms. She cannot be compelled to look to CWNevada or to require CWNevada's consent to pay or settle her claims. The Debtor does not indicate how a non-participating third party (Ms. Goldstein) can be prevented from pursuing her claims against the primary obligor (the Debtor),

---

[7] As of the filing of this Reply, the monthly operating report for July 2022 has not been filed by the Debtor and is tardy.



because another party (CWNevada) has agreed with the primary obligor to provide an indemnity for the benefit of the primary obligor.

Furthermore, there is nothing in the Indemnification Agreement that prevents the Debtor from paying its obligations to Ms. Goldstein. The Debtor can submit an award in favor of Ms. Goldstein to CWNevada,[8] and if not paid in 30 days, the Debtor can pursue litigation. But, nothing in the Indemnification Agreement or under applicable law would prevent the Debtor from honoring and paying the Judgment in favor of Ms. Goldstein.

### D.   CONCLUSION

Based on the foregoing and the Motion, this Case should be dismissed as the Debtor's business operations and the ownership of its existing assets would constitute a violation of the CSA, and the continuation of the Case would require the Court, the Trustee, and the Debtor to administer assets that are illegal under the CSA. Pursuant to 11 U.S.C. § 305(a), the interests of creditors and the Debtor would be better and best served by dismissal of this Case. Additionally, there is cause and it is in the best interests of creditors and this Estate under 11 U.S.C. § 1112(b) for this Case to be dismissed.

Dated this 30th day of August, 2022.

DICKINSON WRIGHT PLLC

/s/ Brian R. Irvine
BRIAN R. IRVINE
WILLIAM L. NOVOTNY
100 West Liberty Street
Suite 940
Reno, Nevada 89501

*Attorneys for Jennifer M. Goldstein*

4854-3411-4864 v2 [88728-1]

---

[8] Ms. Goldstein assumes, but does not know, if the Debtor provided CWNevada with either the Arbitrator Final Award or the Judgment in favor of Ms. Goldstein and made a demand for payment.

